IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| AMERICA WASHINGTON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 1:23CV246 |
| | ) | |
| TITLEMAX OF VIRGINIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

America Washington, *et al.* ("Plaintiffs")[1] brought this action pursuant to the North Carolina Consumer Finance Act, the North Carolina Unfair and Deceptive Trade Practices Act, and North Carolina's usury statutes against TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc., TMX Finance of Virginia, Inc., and TitleMax of Georgia, Inc., and TitleMax of Tennessee, Inc., TMX Finance of Tennessee, Inc., and TMX Finance, LLC. ("Defendants"). (*See* ECF No. 15 ¶¶ 22, 28, 41.) Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer Venue. (ECF No. 44.) For the reasons stated herein, Defendants' motion will be denied.

**I. BACKGROUND**

Plaintiffs in this action are, or were, residents of North Carolina who allegedly entered into car title loan transactions with Defendants. (ECF No. 15 ¶ 1.) Plaintiffs allege that

---

[1] While Plaintiffs in this action exceeds dozens of individuals as outlined in the Complaint, (ECF No. 15 at 1–7), of those, only 34 Plaintiffs as outlined in Defendants' Exhibit 1, (ECF No. 45-1 at 6), are those subject to the instant motion.

Defendants charged interest rates on their car title loans that exceed the rate allowed by the North Carolina Consumer Finance Act, N.C. GEN. STAT. §§ 24-1.1, 53-164 to -191. (*Id.* ¶¶ 22, 28.) Plaintiffs also allege that Defendants failure to disclose that the loan was unlawful constitutes unfair and deceptive trade practices within the meaning of N.C. GEN. STAT. § 53-180(g) and N.C. GEN. STAT. § 75-1.1. (*Id.* ¶ 41.)

This action began in state court and Defendants removed it to federal court on the basis of diversity jurisdiction. (ECF No. 1.) On March 24, 2023, Plaintiffs then filed their Complaint with this Court. (*See* ECF No. 15.) In their Complaint, Plaintiffs state that this Court has personal jurisdiction over Defendants "in that at all times relevant to the events and transactions alleged herein, Defendants, via the internet, cellular telephone and/or other media and communication methods solicited, marketed, advertised, offered, accepted, discussed, negotiated, facilitated, collected on, threatened enforcement of, and/or foreclosed upon automobile title loans with Plaintiffs." (*Id.* ¶ 4.)

In Defendants' answer, they assert a lack of personal jurisdiction as a defense, and subsequently Defendants jointly filed the instant Motion to Dismiss alleging lack of personal jurisdiction. (ECF Nos. 30 at 7; 44 at 1.) On October 5, 2023, Plaintiffs filed a Motion for Jurisdictional Discovery to "provide a full record [in] response to Defendants' Motion to Dismiss." (ECF No. 55 at 1.) This motion was granted, and the parties conducted jurisdictional discovery. (ECF No. 64 at 2–4.)

In the instant motion to dismiss, Defendants argue that this Court lacks personal jurisdiction because Defendants do not "maintain contacts with North Carolina in connection with any [of] Plaintiffs' claims." (ECF No. 45 at 3.) Defendants alternatively argue for this

Court to transfer venue to the district court where each Plaintiffs "title loan was executed[,] and the loan funds were conveyed." (*Id.* at 17.) The Court will address each argument in turn.

## II. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Standard of Review

Here, the parties are in dispute regarding the burden of proof Plaintiffs must satisfy to show that this Court has personal jurisdiction over Defendants. Defendants argue that Plaintiffs must show personal jurisdiction by a preponderance of the evidence and Plaintiffs counter that they need only make a prima facie showing. (ECF Nos. 69 at 1; 63 at 7.)

In a challenge to personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the ultimate burden of proving jurisdiction. *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016) (citation omitted); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (citation omitted). The Fourth Circuit has stated that the plaintiff's burden of proof "varies according to the posture of [the] case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268.

Where the court decides a pretrial personal jurisdiction question without conducting an evidentiary hearing — "reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint"— "a plaintiff need only make a prima facie showing of personal jurisdiction" to overcome a jurisdictional challenge. *Id.* Where, however, the parties have engaged in discovery on the issue of personal jurisdiction and have submitted evidence beyond the pleadings, the court "must hold the plaintiff to its burden of proving facts, by a preponderance of the evidence, that demonstrate the court's personal jurisdiction over the defendant." *Id.*; *see also, e.g., AARP v. Am. Family Prepaid Legal Corp.*, 604 F.Supp.2d 785, 797 (M.D.N.C. Feb 25, 2009) (holding the plaintiff to

3

a preponderance of the evidence standard because the parties had engaged in jurisdictional discovery).

Here, this Court granted Plaintiffs' Motion for Jurisdictional Discovery, (ECF No. 64 at 2–3), and jurisdictional discovery was conducted. As the Court will look to evidence outside of the pleadings in resolving the issue of personal jurisdiction, Plaintiffs are required to establish personal jurisdiction by a preponderance of the evidence. *See Grayson*, 816 F.3d at 269 (finding that the preponderance of the evidence standard was correctly applied as "full discovery had been conducted and the relevant evidence on jurisdiction had been presented to the court").

A "preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Concrete Pipe and Prods. of California, Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 622 (1993) (internal quotation marks omitted) (citation omitted). "[I]f a court requires the plaintiff to establish facts supporting personal jurisdiction by a preponderance of the evidence prior to trial, it must conduct an evidentiary hearing." *Grayson*, 816 F.3d at 268 (internal quotations omitted). However, evidentiary hearings do not require live testimony. *Id.* Evidentiary hearings require that both parties are given a fair opportunity to present relevant jurisdictional evidence and their legal arguments. *Id.*; *see also Sec. & Exch. Comm'n v. Receiver for Rex Ventures Grp., LLC.*, 730 F. App'x 133, 136 (4th Cir. 2018) (citation omitted).

This Court does not find an evidentiary hearing necessary in this case as the parties were permitted to conduct jurisdictional discovery that included submitting requests for productions, taking depositions, and obtaining documentation relating to the loans. (ECF No. 64 at 2–3.) Additionally, the parties have extensively briefed the issue of personal jurisdiction.

4

(*See* ECF Nos. 45; 63; 69.) Thus, both sides have had a fair opportunity to present jurisdictional evidence and their legal arguments. *See Grayson*, 816 F.3d at 268. As the Court has now determined that Plaintiffs must establish personal jurisdiction by a preponderance of the evidence, it will now address whether they have met their burden.

**B. Discussion**

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (citation omitted). A federal district court can exercise personal jurisdiction over a nonresident defendant only if "(1) such jurisdiction is authorized by the long-arm statute of the state in which the district court sits; and (2) application of the relevant long-arm statute is consistent with the Due Process Clause of the Fourteenth Amendment." *Universal Leather, LLC. V. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014) (citation omitted).

Regarding the first prong, North Carolina's long-arm statute provides for jurisdiction over "nonresident defendants to the full extent permitted by the Due Process Clause." *Christian Sci. Bd. Of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001) (citation omitted). The two-prong test, therefore, "merges into [a] single question," allowing the court to proceed directly to the constitutional analysis. *Universal Leather*, 773 F.3d at 558–59, 559. Therefore, the question the Court must now determine is whether asserting personal jurisdiction over Defendants is consistent with the Due Process Clause of the Fourteenth Amendment. *See, e.g., id.*

Under the Due Process Clause, two paths permit a court to exercise personal jurisdiction over a nonresident defendant, general jurisdiction and specific jurisdiction. *Universal Leather*, 773 F.3d at 559. General jurisdiction "permits a court to assert jurisdiction

over a defendant based on a forum connection unrelated to the underlying suit." *Walden*, 571 U.S. at 283 n.6. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011) (citation omitted). "[F]or a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.* at 924. The Supreme Court has "not foreclose[d] the possibility that in an exceptional case, . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014).

This Court finds that it lacks general jurisdiction over Defendants. In their Complaint, Plaintiffs state that Defendants are "foreign corporations organized and existing under the laws of a state other than North Carolina." (ECF No. 15 ¶ 3.) Defendants are not incorporated in North Carolina, nor do they have their principal place of business here. (*See id.* ¶¶ 2, 3.) Therefore, Defendants are not fairly regarded to be at home in North Carolina. *See Goodyear*, 564 U.S. at 924. The Court will now turn to whether there is specific jurisdiction over Defendants. *See Universal Leather*, 773 F.3d at 559.

The second path to exercise personal jurisdiction over a defendant is specific jurisdiction, which "depends on an 'affiliatio[n] between the forum and the underlying controversy.'" *Walden*, 571 U.S. at 283 n.6. (alteration in original) (quoting *Goodyear*, 564 U.S. at 919). Courts employ a three-prong test to determine whether the exercise of specific jurisdiction comports with the requirements of due process. *Universal Leather,* 773 F.3d at 559. Courts consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose]

6

out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.* (alteration in original) (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 302 (4th Cir. 2012)).

The first prong, purposeful availment, is grounded in the concept of minimum contacts and contemplates whether "the defendant's conduct and connection with the forum [s]tate are such that [it] should reasonably anticipate being haled into court there." *Id.* (alteration in original) (quoting *Fed. Ins. Co. v. Lake Shore Inc.*, 886 F.2d 654, 658 (4th Cir. 1989)). To satisfy the minimum contacts requirement for specific jurisdiction, "the contacts [must] proximately result from actions by the defendant [itself] that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citations omitted).

Relevant to the analysis is the quality and nature of the defendant's connections, rather than the number of contacts between the defendant and the forum state. *Tire Eng'g*, 682 F.3d at 301. The relationship between the defendant, the forum state, and the litigation "must arise out of contacts that the 'defendant himself' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Rudzewicz*, 471 U.S. at 475). The defendant cannot "be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person.'" *Rudzewicz*, 471 U.S. at 475 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)) (additional citation omitted).

The Fourth Circuit has noted that this analysis is "flexible" and involves a case-by-case consideration of several factors. *Universal Leather*, 773 F.3d at 560 (internal quotation marks omitted) (quoting *Tire Eng'g*, 682 F.3d at 302). Those factors include, but are not limited to, evaluating: "(1) whether the defendant maintains offices or agents in the forum state; (2)

7

whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum." *Id.* (internal quotation marks omitted) (citation omitted).

With respect to the first and second factors it is undisputed that Defendants do not maintain an office or place of business in North Carolina, nor do Defendants own property in North Carolina. (ECF No. 15 ¶¶ 2, 3.) However, the third factor applies here as this Court finds that Defendants have reached into the forum state to solicit or initiate business. Plaintiffs submitted dozens of declarations that state how Plaintiffs first learned about Defendants. Many Plaintiffs indicate that they learned about Defendants by hearing about them on the radio while in North Carolina. (ECF Nos. 74-6 ¶ 3; 74-12 ¶ 3; 74-13 ¶ 3; 74-22 ¶ 3; 74-27 ¶ 3.) Others state that they learned about Defendants on the internet while they were in North Carolina. (ECF Nos. 74-9 ¶ 3; 74-11 ¶ 3; 74-16 ¶ 3; 74-20 ¶ 3; 74-24 ¶ 3; 74-25 ¶ 3.) Or they heard about Defendants from a television advertisement in North Carolina. (ECF Nos. 74-8 ¶ 3; 74-19 ¶ 3; 74-37 ¶ 3.)

While Defendants submit a declaration of a TMX Finance employee that states, "[Defendants] never personally solicited, while physically present in North Carolina, any of the named plaintiffs in the actions," this does not contradict Plaintiffs' assertions that they

8

were solicited via radio, television, and the internet. (ECF No. 45-2 ¶ 35.) Defendants advertising to Plaintiffs manifests a general intent to do business with North Carolina residents. *Bassett v. Strickland's Auto & Truck Repairs, Inc.*, 1:17CV590, 2018 WL 3542868, at *4 (M.D.N.C. July 23, 2018) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (O'Connor, J., plurality op.); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

This Court also finds that Defendants deliberately engaged in significant or long-term business activities in the forum state, the fourth factor. Defendants do not contest Plaintiffs assertion that Defendants recorded liens with the North Carolina Department of Motor Vehicles. Defendants instead argue that the recording of a vehicle lien in North Carolina is a "*de minimis* interaction" as it requires "nothing more than filing a form." (ECF No. 45 at 11 (citations omitted).)

A defendant "creat[ing] continuing obligations between [it]self and residents of the forum" may give rise to specific jurisdiction. *Purdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 190 (4th Cir. 2016) (alteration in original) (internal quotation marks omitted) (citation omitted). While recordation of the liens with the North Carolina Department of Motor Vehicles may not by itself be enough to assert personal jurisdiction, in recording the lien and entering into the loan agreements with Plaintiffs, Defendants created continued obligations between themselves and residents of North Carolina. *See Walden*, 571 U.S. at 285 (upholding the assertion of jurisdiction over defendants who "have purposefully reach[ed] out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum state." (alteration in original) (internal quotation marks omitted) (citations omitted)).

9

Here, Defendants advertised to North Carolina customers, entered into lien agreements with the North Carolina Department of Motor Vehicles, and accepted continuing payments from Plaintiffs residing in North Carolina. The Court finds that Defendants have made sufficient minimum contacts with North Carolina to support personal jurisdiction over them by this Court. *See Leake v. AutoMoney, Inc.*, 877 S.E.2d 22, 30, 33 (N.C. Ct. App. 2022) (finding personal jurisdiction where Defendant called potential North Carolina borrowers, offered loans over the phone to North Carolina residents, directed North Carolina residents to travel out of state, accepted payments from North Carolina, sent collection letters into North Carolina, and recorded liens with the North Carolina Department of Motor Vehicles).

As the Court has determined that Defendants have purposefully availed itself of the privileges of conducting business in North Carolina, it will now move to the remaining factors in the specific jurisdiction inquiry. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (finding that "if and only if" the court finds plaintiff has satisfied the purposeful availment prong, does the court need to consider the remaining prongs of the specific jurisdiction test).

The second prong of the specific jurisdiction test asks whether Plaintiffs' claims arose out of Defendants' activities in the state. *Id.* at 278–79 (citations omitted). Here, Plaintiffs' claims allege that Defendants charged interest rates exceeding the maximum amount allowable under state law, that Defendants failed to "properly and legally record liens," and that Defendants failed to disclose unlawful loans. (ECF No. 15 ¶¶ 21–46.) These claims arise out of Defendants contacts with the state as Defendants contacts all relate to entering into loan agreements with Plaintiffs.

10

The third and final prong of the specific jurisdiction test, that the exercise of personal jurisdiction be constitutionally reasonable, has also been proven by Plaintiffs. *Consulting Eng'rs*, 561 F.3d at 279. This prong permits a court to consider additional factors related to the appropriateness of the forum. These factors include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.*

The Court finds that the exercise of personal jurisdiction is constitutionally reasonable as the forum is appropriate. First, Defendants do not have a significant burden if they were to litigate in this forum, and Defendants do not argue that there is one. (*See* ECF No. 45.) Additionally, Plaintiffs' claims arise under the consumer protection laws of North Carolina giving this forum a large interest in adjudicating the dispute. (*See* ECF No. 15.)

In sum, the Court concludes that Plaintiffs have satisfied their burden of proving that this Court has personal jurisdiction over Defendants by a preponderance of the evidence. Accordingly, Defendants motion to dismiss is denied.

### III. MOTION TO TRANSFER VENUE

Defendants moved in the alternative to transfer venue pursuant to 1404(a). (ECF No. 45 at 17.) Defendants argue that this action should be transferred to the "appropriate district court encompassing the TitleMax location where that Plaintiff's title loan was executed and the loan funds were conveyed." (*Id.*) Defendants submitted charts outlining the district court they believe each Plaintiff's case should be transferred. (ECF No. 45-2 at 8–18.) They move for the actions to be transferred to several district courts located throughout Virginia, South

11

Case 1:23-cv-00246-LCB-JLW   Document 92   Filed 05/29/25   Page 11 of 15

Carolina, Tennessee, and Georgia. (*Id.*) Plaintiffs counter that piecemealing their actions and transferring the matter to different districts "does not serve efficiency or justice." (ECF No. 74 at 19.) This Court agrees with Plaintiffs.

The text of 28 U.S.C. § 1404(a) states in relevant part: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In this Circuit, a four-factor standard governs § 1404(a) motions. *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Courts consider "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice" (hereinafter "the *Pipefitters* factors"). *Id.* "Ultimately, the party seeking transfer has the burden of persuasion." *Davis v. Stadion Money Mgmt., LLC*, No. 1:19CV119, 2019 WL 7037426, at *3 (M.D.N.C. Dec. 20, 2019) (internal quotation marks omitted) (citation omitted).

Regarding the first element, this Court affords substantial weight to the Plaintiffs' choice of venue. *Pipefitters*, 791 F.3d at 444 (citation omitted); *see also Speed Trac Tech., Inc. v. Estes Express Lines, Inc.*, 567 F. Supp. 2d 799, 803 (M.D.N.C. Mar. 2, 2008) (citing *In re Carefirst of Md., Inc.*, 305 F.3d 253, 260 (4th Cir. 2002)). This is especially true when plaintiff's chosen forum is the plaintiff's home or has a significant relationship with the cause of action. *See Campbell v. Apex Imaging Servs., Inc.*, Nos. 1:12CV1366, 1:12CV1365, 2013 WL 4039390, at *3 (M.D.N.C. Aug. 7, 2013) (citation omitted). Plaintiff's choice, however, receives less weight if the suit is filed in a foreign forum or the cause of action bears little relation to the chosen forum. *Speed Trac Techs.*, 567 F. Supp. 2d at 803 (citations omitted).

12

Defendants argue that since "none of the conduct complained of occurred in the forum and the forum has no connection with the cause of action," Plaintiffs' choice of forum should be given little weight. (ECF No. 45 at 17.) However, the cause of action does bear relation to the chosen forum as Plaintiffs, at the time these allegations occurred, resided in North Carolina, were solicited to enter into loan agreements from North Carolina, and paid Defendants from North Carolina. Defendants' argument that the "content of the loan agreements" occurred entirely outside this forum is unpersuasive. (*Id.*)

The second and third *Pipefitters* factors require this Court to consider the convenience of this District for the witnesses and parties. *See Pipefitters, Inc.*, 791 F.3d at 444 (citations omitted). "[E]ven though a defendant may be inconvenienced by litigating an action in a plaintiff's home district, a transfer is not appropriate where it would likely only serve to shift the balance of inconvenience from the plaintiff to the defendant." *comScore, Inc. v. Integral Ad Sci., Inc.*, 924 F.Supp.2d 677, 687 (E.D. Va. Feb. 15, 2013) (internal quotation marks omitted) (citations omitted).

Defendants do not provide sufficient factual evidence to show that they will suffer inconvenience by litigating in this District, nor do they show why splitting up this case throughout several different states would be more convenient for Plaintiffs. Defendants argue that since "no Defendant is located within North Carolina . . . there is no evidence, physical premises, or witnesses within the forum." (ECF No. 45 at 18.) This Court does not find this argument persuasive. Additionally, access to tangible evidence and witnesses, is less of a barrier today for litigation because of modern technology. *See Wyandotte Nation v. Salazar*, 825 F.Supp.2d 261, 271 (D.D.C. 2011). Further, a transfer of venue would heavily burden

13

Case 1:23-cv-00246-LCB-JLW     Document 92     Filed 05/29/25     Page 13 of 15

Plaintiffs given that Plaintiffs would possibly need to find counsel to represent them in the other districts.

Finally, for the fourth *Pipefitters* factor, the interest of justice, weighs heavily against Defendants. *See Pipefitters, Inc.*, 791 F.3d at 444 (citations omitted). In examining this factor, this Court considers "the pendency of a related action, the court's familiarity with the applicable law, docket conditions," and other factors related to systemic integrity and judicial economy. *Menk v. MITRE Corp.*, 713 F.Supp.3d 113, 139 (D. Md. 2024) (internal quotation marks omitted) (citations omitted).

The interest of judicial economy is a significant factor in this case as many Plaintiffs have filed suits against Defendants in this District and this Court is very familiar with the case. Additionally judicial efficiency would be affected if the Court were to split these Plaintiffs amongst several different states and several different district courts as Defendants suggest. Plaintiffs have filed almost identical Complaints, and the risk of inconsistent judgments arises from trying these cases separately. *See, e.g., Bluestone Innovations, LLC v. LG Elecs., Inc.*, 940 F.Supp.2d 310, 320 (E.D. Va. Apr. 12, 2013).

In weighing the factors, the Court finds that the balance of hardships would be borne by Plaintiffs' if the case were transferred to separate districts. *See, e.g., Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984) (finding that unless when weighing the factors this Court finds the balance of hardships is *strongly* in favor of the defendant, the plaintiff's choice of forum should not be disturbed) (citation omitted). Therefore, this Court finds that Defendants have not met its burden to prove that transfer of venue is warranted here, and Defendants motion in the alternative to transfer venue is denied.

For the reasons stated herein, the Court enters the following:

14

## ORDER

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (ECF No. 44), is **DENIED**.

This, the 29th day of May 2025.

                                            /s/ Loretta C. Biggs
                                            Senior United States District Judge